Paul FUENTES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–92–023–CR.

Court of Appeals of Texas, Corpus Christi.

Jan. 14, 1993.

**528**

Rodney F. Durham, Victoria, for appellant.

George J. Filley, III, Dist. Atty. Keith S. Weiser, Victoria, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and KENNEDY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

A jury found appellant guilty of murder and assessed his punishment at ninety-nine years in prison and a $7,000 fine. We affirm.

In his first point of error, appellant contends that the trial court erred in admitting fourteen photographs which depicted the crime scene or the deceased's body. Appellant asserts that these exhibits were highly inflammatory and cumulative of scenes from a previously admitted videotape of the crime scene. He argues that the photographs thus had little probative value but great prejudicial effect.

Under Tex.R.Crim.Evid. 403, relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Long v. State*, 823 S.W.2d 259, 271 (Tex.Crim. App.1991); *see Ramirez v. State*, 815 S.W.2d 636, 646–47 (Tex.Crim.App.1991).

Appellant specifically complains about State exhibits 3–6, 9, 14–18, 20, and 51–53. Exhibits 3–6 and 9 are 8x10 color photographs depicting the crime scene. These exhibits were offered through the testimony of a police officer who examined the crime scene shortly after the body was discovered. Exhibit 3 shows the deceased's body from a distance and the general crime scene within the deceased's home. We do

not consider it gruesome. Exhibit 4 is a closer view of the victim, taken from an angle different from exhibit 3. It depicts a broken bottle next to the victim. While it shows the deceased's bloody face and blood stains upon the nearby wall and floor, it is not particularly gruesome. Exhibit 5 is a close-up shot of a portion of the deceased's stomach. While it depicts a fork-stab wound, it is not gruesome. Exhibits 6 and 9 depict blood stains and a broken bottle. These exhibits are not gruesome.

We have reviewed the videotape in its entirety and find that these crime scene photographs largely duplicate scenes shown to the jury in the videotape. Nonetheless, we do not find that these crime-scene photographs are inflammatory and *unfairly* prejudicial. The trial court had discretion to admit these photographs, and we will not disturb that decision. *See Long*, 823 S.W.2d at 273; *Ramirez* 815 S.W.2d at 647.

■ The remaining exhibits are autopsy photographs which were introduced through the testimony of Dr. Roberto Bayardo, the medical examiner who performed an autopsy on the deceased. Bayardo testified that the victim suffered a total of 55 stab wounds. The stab wounds were primarily not deep wounds, and the cause of death was blunt trauma to various portions of the deceased's body.

Exhibits 14–20 are 8x10 color photographs. Exhibit 14 primarily depicts the deceased's hand, showing a couple of minor injuries which appear to be defensive wounds. The photograph is not gruesome. Exhibit 15 depicts the victims left arm, with a pair of scissors entering one side of the arm and exiting the other. The photograph does not show any blood around the wound. The medical examiner testified that the wound to the arm was "through and through" and that he used a pair of scissors in the wound to demonstrate the stab wound. The exhibit is not gory. Exhibit 16 shows multiple stab wounds on the deceased's back. It is not gruesome. Exhibit 17 depicts injuries primarily to the deceased's lower lip, while exhibit 18 primarily shows injuries to the upper lip area.

These photographs are not for the squeamish, but they are not particularly gruesome either. Exhibit 20 shows multiple stab wounds on the left side of the deceased's head. We would characterize this exhibit as somewhat gory.

Exhibits 51–53 are 3x5 color photographs. Exhibit 51 shows the deceased's bruised and cut face. Exhibit 52 is essentially the same as exhibit 17, showing the left side of the deceased's head. Exhibit 53 depicts the deceased's left chest and abdominal area from the side. These photographs are graphic and show much bruising and blood. The autopsy photographs show the deceased's injuries in much more detail than the crime scene photographs and the videotape. With the exception of exhibit 52, each autopsy exhibit depicts a different portion of the deceased's wounds. The medical examiner specifically testified about these wounds. It thus appears to us each autopsy photograph, perhaps with the exception of exhibit 52, had independent probative value and was not cumulative of the photographs or videotape previously admitted. We conclude that the probative value of the autopsy exhibits was not substantially outweighed by any unfair prejudice. The trial court did not err in admitting the autopsy photographs.

■ If the trial court erred by admitting exhibit 52, which as noted above was essentially cumulative of exhibit 17, we find the admission of the exhibit harmless. In light of the other photographs introduced and the evidence establishing appellant's guilt, the prejudicial effect of this one photograph, if unfair, was so insignificant that we can say beyond a reasonable doubt that its admission did not contribute to the conviction or to the punishment assessed. *See* Tex.R.App.P. 81(b)(2). Appellant's first point of error is overruled.

In his third point, appellant contends the State failed to prove his videotaped confession was made voluntarily. In his second point, appellant contends the trial court erred by failing to make specific findings regarding the absence of testimony from persons who interacted with appellant before the confession was videotaped. In

this regard, appellant focuses on the absence of testimony from Sergeant John Burney who brought appellant to the police station and videotaped an interview with him.

■ Before trial, appellant requested a hearing on the voluntariness of the videotaped interview. Appellant did not allege that the statement was coerced or involuntary. Even though appellant neither testified, nor offered any evidence on the voluntariness of the statement, a trial objection is sufficient to raise an issue of voluntariness, thereby requiring the State to prove the voluntariness of the statement. *See Wicker v. State,* 740 S.W.2d 779, 782 (Tex. Crim.App.1987). In response to appellant's motion, the trial court held a hearing on the voluntariness of the videotaped interview, in which appellant confessed to killing the deceased.

■ At the hearing, Sergeant Chris Garcia testified that on December 14, 1990, he and Sergeant John Burney spoke to appellant's mother, Rosie Paez, at the Victoria police station. When they told her that appellant was seen driving the deceased's car the night before his body was discovered, appellant's mother began crying and told the police officers that her son killed the victim. Sergeant Burney and Paez then went to her house to pick up appellant. Garcia did not accompany Burney to appellant's house. Later, Burney returned to the station with appellant and his mother. They were placed in an interview room. Garcia did not hear the conversation that occurred in the interview room. Garcia did not recall whether the door was open. They only stayed in the room about a minute or two. Burney came out and said they were going downstairs to videotape appellant's statement.

Burney and Garcia then went downstairs, leaving appellant and his mother in the interview room. After Garcia and Burney set up and checked out the equipment, Burney conducted the interview. Present were Burney, Garcia, Paez, and appellant. Garcia operated the equipment.

Garcia viewed the videotape at the suppression hearing and testified that the tape showed the full interview. Garcia testified that there was no coercion or enticement done in his presence. On the videotape, Burney first warned appellant of his rights, and appellant indicated that he understood them. Burney asked whether appellant had been threatened, coerced, or promised anything to make a statement. Appellant answered negatively. The videotaped interview is approximately one hour long. During the interview, appellant was not restrained and appears to talk freely about the incident. Appellant's mother sat across the table from appellant, next to Burney, primarily watching but sometimes participating in the interview. The video reflects no coercion, threats, or promises.

Captain Jack Williams testified that he accompanied Burney and Paez to pick up appellant. Williams remained outside while Burney and Paez went inside. Williams went inside when he heard appellant was there. Appellant agreed to come to the police station. He was not restrained. The four then returned to the police station. Williams never heard appellant threatened or promised anything. Burney took them to an interview room, but Williams did not remember whether Burney entered that room. The State called no additional witnesses, and appellant presented no witnesses.

With appellant presenting no evidence to contradict the State's version of events, the trial court found that appellant intelligently and voluntarily made his statement. The trial court made findings which fill four pages in the statement of facts.[1]

■ Once the issue of voluntariness of a confession is raised, the State carries the burden of proving that the confession was given voluntarily. *Griffin v. State,* 765 S.W.2d 422, 430 (Tex.Crim.App.1989). Appellant complains the State failed to meet its burden because it failed to call Sergeant Burney to testify. Appellant suggests that the State had a burden to establish through

---

1. Findings entered by this method meet the requirement of Tex.Code Crim.Proc.Ann. art. 38.-  22, § 6 (Vernon 1979); *Parr v. State,* 658 S.W.2d 620, 623 (Tex.Crim.App.1983).

Burney's testimony that no promises, threats, or coercion occurred before the videotape recording began. We disagree. The testifying officers and videotape show that the interview was voluntarily given, and no evidence was introduced to show that any threats, coercion, or promises were made to appellant to secure his statement. On the basis of this uncontroverted evidence, the trial court found the statement voluntarily given. The trial court did not abuse its discretion in finding the statement voluntary. *See Barefield v. State*, 784 S.W.2d 38, 40–41 (Tex.Crim.App.1989). We also find, in light of the uncontroverted testimony, that the trial court's findings of fact and conclusions of law were sufficient. *See Perez v. State*, 674 S.W.2d 851, 854 (Tex.App.—Corpus Christi 1984, no pet.). Appellant's second and third points of error are overruled.

The judgment of the trial court is affirmed.